IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DELILAH MARTSOLF, )
 )
    Plaintiff, )
 )
    v. ) Civil Action No. 13-1581
 ) United States Magistrate Judge
UNITED AIRLINES, INC., ) Cynthia Reed Eddy
 )
    Defendant. )

**MEMORANDUM OPINION**

Before the Court is Defendant United Airlines Inc.'s partial Motion to Dismiss Counts II, III, and IV of Plaintiff's Complaint.[1] (ECF No. 8). Plaintiff concedes that Count IV of the Complaint pertaining to a violation of the Pennsylvania Human Relations Act ("PHRA") should be dismissed as untimely. (ECF No. 20). Accordingly, Defendant's Motion to Dismiss Count IV will be **GRANTED**. Plaintiff, however, challenges Defendant's assertions that Counts II and III should be dismissed. (ECF No. 20). For the reasons explained below, Defendant's Motion to Dismiss Counts II and III will be **DENIED**.

**Background**

On February 3, 2013, Plaintiff filed a charge of discrimination, *pro se*, with the EEOC averring that Defendant discriminated against Plaintiff based on her alleged disability: hearing loss that also affects her ability to speak. (ECF Nos. 8-1, 20-1). In said charge, Plaintiff asserted, among other things, the following:

---

[1] The Complaint is numbered incorrectly. Therefore, the Court will refer to the counts in the order that they appear in the Complaint: Count 1 – Harassment; Count II – Termination: Count III - Americans with Disabilities Act; and Count IV – Pennsylvania Human Relations Act.

1

- Plaintiff was hired by Defendant on or about October 31, 2011 as a part-time Station Coordinator.

- Plaintiff reported to three (3) supervisors: John Gallahan, Donald Beckley, and Jeff Arnold. Those three supervisors all reported to the General Manager, Melvin Johnson.

- Plaintiff was "repeatedly subjected to harassment from Mr. Johnson, Mr. Arnold, Mr. Gallahan and Coordinator, Joanne Triplett when they would frequently tell [Plaintiff] to repeat [herself] or say that they did not understand [Plaintiff]."

- "When [Plaintiff] asked them to repeat themselves they would scream at [her] thinking that [she] could not hear or understand them."

- "Ms. Triplett would hold her nose and talk while mimicking [Plaintiff]."

- "Mr. Johnson and Ms. Triplett would make faces and gestures while behind [Plaintiff's] back, but [Plaintiff] saw them as they stood behind [her] through their reflections on the computer monitor screen."

- Plaintiff asserted that Mr. Johnson "would roll his eyes at [her] while making faces to others present in the area."

- Plaintiff asserted that Mr. Johnson screamed at Plaintiff: (1) "Are you stupid and can't understand what people are saying?"; (2) "I gave you a simple task! Are you stupid and cannot perform a simple task?"; and (3) "Are you deaf, dumb or stupid? Never mind [sic], you are just stupid."

- Plaintiff asserted that on or about March 14, 2012, Mr. Johnson reviewed Plaintiff's performance and "belittled" her during the discussion, stating that "no one in the office can stand [Plaintiff] including [Mr. Johnson]." Plaintiff allegedly responded that she got

along well with everyone that worked in the station, to which Mr. Johnson replied that Plaintiff was "a very blind and stupid person" if she "cannot see that [she] is hated here."

- Plaintiff received a written "Letter of Concern" from Mr. Johnson on or about March 22, 2012, stating that Plaintiff was having "performance deficiencies."

- On or about April 10, 2012, "Ms. Triplett stated in front of the Manager and Supervisors that the copy machine was broke and making noises, but she said, '[Plaintiff] claims she cannot hear that noise. How can she not hear it when it is so loud?'" According to the charge, "everyone present just laughed."

- Plaintiff received a letter on or about April 11, 2012 stating she was discharged. According to Plaintiff, the letter informed her "that due to ongoing performance issues and numerous occasions of speaking to team-members in an unprofessional manner, [Plaintiff's] employment was terminated effective immediately."

- Plaintiff asserted that she never complained to Human Resources about the alleged discrimination and hostile work environment that she "was continuously subjected to by co-workers, supervisors and Manager, but each was placed upon notice by [Plaintiff] that their comments, gestures and behaviors [were] inappropriate and unacceptable."

- Plaintiff asserted that she was discriminated against because of her national origin in violation of Title VII of the Civil Rights Act of 1964 and disabilities in violation of the Americans with Disabilities Act Amendments of 2008, whereby she was "subjected to ongoing harassment that created a hostile work environment that adversely affected [her] abilities to perform [her] job in a satisfactory manner."

(ECF Nos. 8-1, 20-1).

On October 31, 2013, Plaintiff filed a Complaint with this Court pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12133 ("ADA"). (ECF No. 1). As already noted, Count IV of Plaintiff's complaint relating to violation of the PHRA will be dismissed. Therefore, the Complaint now has three relevant Counts: (I) Harassment, (II) Termination, and (III) violation of the ADA. (ECF No. 1). On January 10, 2014, Defendant filed a motion for partial dismissal of the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 8). Specifically, Defendant seeks to have Counts II and III dismissed, arguing that these counts are not within the scope of Plaintiff's EEOC Charge. Defendant alternatively seeks to have Count III dismissed, stating that it is duplicative of the claims listed in Counts I and II. The matter has been fully briefed. (ECF Nos. 9, 20, 21).

**Standard of Review**

In light of the Supreme Court's decision in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), a complaint may be dismissed pursuant to Rule 12(b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Phillips v. Co. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). While *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957) allowed dismissal of a claim only if "no set of facts" could support it, under *Twombly*, and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), a claim for relief under Rule 12(b)(6) now "requires more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678.

In *Iqbal*, the Supreme Court held that a claim is facially plausible when its factual content allows the court to draw a reasonable inference that the defendants are liable for the misconduct alleged. *Fowler v. UPMC Shadyside*, 578 F.3d 203 (3d Cir. 2009) (citing *Iqbal*, 556 U.S. at 678). The plausibility standard in *Iqbal* "asks for more than a sheer possibility that a defendant has

acted unlawfully." *Iqbal*, 556 U.S. at 678. While well-pleaded factual content is accepted as true for purposes of whether the complaint states a plausible claim for relief, legal conclusions couched as factual allegations or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to an assumption of truth. *Iqbal*, 566 U.S. at 678. "Where the well-pleaded facts do not permit the court to infer more than a mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]' - 'that the pleader is entitled to relief.'" *Iqbal*, 566 U.S. at 679 (quoting Fed.R.Civ.P. 8(a)(2)). In order to satisfy the requirement of Fed.R.Civ.P. 8(a)(2) that a plaintiff include a "short and plain statement of the claim showing that the pleader is entitled to relief," a plaintiff must aver sufficient factual allegations which "nudge" its claims "across the line from conceivable to plausible." *Id*.

As the Court of Appeals for the Third Circuit explained in *Fowler*, 578 F.3d at 210–11:

> . . . The Supreme Court's opinion in *Iqbal* extends the reach of *Twombly*, instructing that all civil complaints must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S.Ct. at 1949.
>
> Therefore, after *Iqbal*, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. *Id*. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." *Id*. at 1950. In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. *See Phillips*, 515 F.3d at 234–35. As the Supreme Court instructed in *Iqbal*, ... [the] "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*.

*See also Santiago v. Warminster Twp*., 629 F.3d 121, 130 (3d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 674, 679); *Burtch v. Milberg Factors, Inc.,* 662 F.3d 212, 221 (3d Cir. 2011), *cert. denied*, ––– U.S., –––– 132 S.Ct. 1861 (2012); *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

In considering a Rule 12(b)(6) motion, a court accepts all of the plaintiff's allegations as true and construes all inferences in the light most favorable to the non-moving party. *Umland v. Planco Fin. Servs.*, 542 F.3d 59, 64 (3d Cir. 2008) (citing *Buck v. Hampton Twp. Sch. Dist.,* 452 F.3d 256, 260 (3d Cir. 2006)). However, a court will not accept bald assertions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. *See In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 215 (3d Cir. 2002); *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 n. 8 (3d Cir. 1997). A court is not required to consider legal conclusions; rather, it should determine whether the plaintiff should be permitted to offer evidence in support of the allegations. *Maio v. Aetna*, 221 F.3d 472, 482 (3d Cir. 2000).

Therefore, a plaintiff must put forth sufficient facts that, when taken as true, suggest the required elements of a particular legal theory. *See Wilkerson v. New Media Tech. Charter Sch., Inc.*, 522 F.3d 315 (3d Cir. 2008) (citing *Phillips*, 515 F.3d at 224). This standard does not impose a heightened burden on the claimant above that already required by Rule 8, but instead calls for fair notice of the factual basis of a claim while raising a "reasonable expectation that discovery will reveal evidence of the necessary element." *Weaver v. UPMC*, 2008 WL 2942139, *3 (W.D.Pa. 2008) (citing *Phillips*, 515 F.3d at 234; and *Twombly*, 550 U.S. at 555).

**Discussion**

It is well-established in the Third Circuit that "once a charge of some sort is filed with the EEOC, . . . the scope of a resulting private civil action in the district court is defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination. . ." *Hicks v. ABT Associates, Inc.* 572 F.2d 960, 966 (3d Cir. 1978) (quoting *Ostapowicz v. Johnson Bronze Co.*, 541 F.2d 394, 398-399 (3d Cir. 1976)) (internal quotations omitted). *See also Webb v. City of Philadelphia*, 562 F.3d 256, 263 (3d Cir. 2009).

Defendant contends that "Plaintiff's purported discrimination claims in Counts II and III arising from employment termination by [Defendant] should be dismissed because [Plaintiff's] EEOC Charge alleged only hostile work environment harassment claims based on disability and national origin, and Plaintiff's purported discriminatory termination claims in this case are not within the scope of her EEOC Charge." (ECF No. 8). Plaintiff counters that "a fair reading of her Charge would lead to an investigation surrounding the adverse job action of termination." (ECF No. 20 at 4). The Court agrees with Plaintiff. Although Plaintiff did not expressly state in the charge of discrimination that she was discharged because of her alleged disability, the Court finds that the allegations set forth in the Complaint relating to termination would be expected to grow out of a reasonable investigation of the harassment allegations.[2]

The charge of discrimination, which was completed by Plaintiff *pro se*, provides specific examples of harassment relating to her alleged disability from her supervisors and manager occurring around the time that she was discharged. Specifically, the charge states that when Plaintiff met with Mr. Johnson on March 14, 2012 to discuss her performance at work, Mr. Johnson "belittled" Plaintiff, stating that she was "a very blind and stupid person" if she could not see that she was "hated" at work. Then, on March 22, 2014, eight days after Mr. Johnson told Plaintiff that he could not stand her, Plaintiff received a letter of concern from Mr. Johnson discussing "performance deficiencies." Shortly thereafter, on April 10, 2014, Ms. Triplett made

---

[2] In Plaintiff's Brief in Response to Defendant's Motion to Dismiss, Plaintiff argues that the EEOC Intake Questionnaire completed by Plaintiff on May 1, 2012 supports her argument that "the EEOC investigator was put on notice that the Plaintiff was claiming that she was discharged due to the discrimination against her." (ECF No. 20 at 5). However, this argument is legally incorrect. *See Barzanty v. Verizon PA, Inc.*, 361 F. App'x. 411, 415 (3d Cir. 2010) ("The EEOC Form and the Intake Questionnaire serve different purposes . . . A plaintiff cannot be allowed to transfer the allegations mentioned only in the questionnaire to the charge itself. Not only would this be circumventing the role of the Commission, but it would be prejudicial to the employer") (internal citations omitted). Notwithstanding, the Court finds that the allegations set forth in the charge of discrimination would reasonably be expected to lead to an investigation of whether an impermissible termination occurred.

a comment about Plaintiff's inability to hear the copy machine, to which "everyone present just laughed." Plaintiff was discharged the following day. A reasonable investigator would read these allegations of harassment in the charge and would further investigate whether Plaintiff suffered a wrongful termination as a result thereof. Consequently, Counts II and III of the Complaint are not outside the scope of the charge of discrimination.

Defendant also asserts that "Plaintiff's claims in Count III are duplicative and should be dismissed." (ECF No. 9 at 6). Plaintiff responds that Count III, which is only a total of five paragraphs, "merely state[s] that the facts as stated in the complaint constitute violations of the ADA," and thus, "there is no redundancy." (ECF No. 20 at 7). The Court agrees with Plaintiff.

**Conclusion**

For the reasons stated above, Defendant's Motions to Dismiss Counts II and III of the Complaint are denied. Defendant's Motion to Dismiss Count IV of the Complaint is granted**.**

By the Court:

/s Cynthia Reed Eddy
Cynthia Reed Eddy
United States Magistrate Judge

cc: all ECF registered counsel

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DELILAH MARTSOLF, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 13-1581 |
| | ) | United States Magistrate Judge |
| UNITED AIRLINES, INC., | ) | Cynthia Reed Eddy |
| | ) | |
| Defendant. | ) | |

**ORDER**

AND NOW, this 7th day of March, 2014, it is hereby ordered that Defendant's Motion to Dismiss Count II (Termination) is **DENIED**. It is further ordered that Defendant's Motion to Dismiss Count III (ADA) is **DENIED**. It is further ordered that Defendant's Motion to Dismiss Count IV (PHRA) is **GRANTED**.

By the Court:

/s Cynthia Reed Eddy
Cynthia Reed Eddy
United States Magistrate Judge

cc: all ECF registered counsel